UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

TODD J. HUNT, :
:
    Plaintiff : No. 4:11-CV-01242
:
  vs. : (Complaint Filed 6/30/11)
:
MICHAEL ASTRUE, :
COMMISSIONER OF SOCIAL : (Judge Munley)
SECURITY, :
:
    Defendant :

**MEMORANDUM**

**Background**

    The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Todd J. Hunt's claim for social security disability insurance benefits.

    Hunt protectively[1] filed his application for disability insurance benefits on December 18, 2008. Tr. 14, 30, 73 and 136.[2] The application was initially denied by the Bureau of Disability Determination on April 22, 2009.[3] Tr. 75-80.

---

1. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

2. References to "Tr.___" are to pages of the administrative record filed by the Defendant as part of his Answer on September 6, 2011.

3. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 76.

On April 28, 2009, Hunt requested a hearing before an administrative law judge. Tr. 87-88.  After about 10 months had passed, a hearing was held before an administrative law judge on February 3, 2010. Tr. 28-72.[4]  On February 25, 2010, the administrative law judge issued a decision denying Hunt's application for disability benefits. Tr. 14-25. On March 25, 2010, Hunt filed a request for review with the Appeals Council. Tr. 9-10 and 177.  After just over 6 months had passed, the Appeals Council on November 1, 2010, concluded that there was no basis upon which to grant Hunt's request for review. Tr. 4-8. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Hunt then after being granted an extension of time by the Commissioner filed a complaint in this court on June 30,

---

4. Plaintiff's counsel in his appeal brief mentions that Plaintiff filed an SSI application and that it was denied at the initial level. Doc. 10, Plaintiff's Brief, p. 1.  A review of the administrative record does reveal that Hunt filed an application for supplemental security income benefits. Tr. 125-127.  However, the disposition of that application is unclear. Generally, there are three documents generated at the initial determination level when a decision on an application is made: (1) a "Disability Determination Transmittal" document; (2) an "Explanation of Determination" document; and (3) a "Personal Decision Notice." Although the record contains those documents for the disability insurance benefits application, it does not contain those documents for the SSI application. Plaintiff was represented by a different attorney during the administrative proceedings. At the administrative hearing held on February 3, 2010, the ALJ asked Plaintiff's counsel the following question: "My file shows this as a Title II application [disability insurance benefits] only. Is that correct?" Tr. 30. Counsel responded to that question in the affirmative. <u>Id.</u>

2011. Supporting and opposing briefs were submitted and the appeal[5] became ripe for disposition on January 30, 2012, when Hunt filed a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Hunt met the insured status requirements of the Social Security Act through September 30, 2009. Tr. 14.

Hunt, who was born in the United States on September 21, 1963,[6] graduated from high school in 1981 and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 34-35, 140, 146 and 159. During his elementary and secondary schooling, Hunt attended regular education classes. Tr. 146.

---

5. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

6. At the time of the administrative hearing and the administrative law judge's decision, Hunt was 46 years of age and considered a "younger individual" whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

Hunt's work history covers the years 1981 through 1991, 1993 through 1995, 1999 through 2003 and 2006 through 2008. Tr. 129. Hunt's total earnings during those years were $110,244.71. Id. His annual earnings ranged from a low of $240.00 in 2003 to a high of $21,609.25 in 2007. Id. Hunt claims that on July 31, 2008, he was opening the driver's side door of his truck when it was struck by another car. Tr. 213. As result Hunt was thrown forward striking the steering wheel with his face and his knees and legs were pushed against the dashboard and steering wheel. Id. Hunt claims he has suffered pain in the middle and lower back and both legs since the incident. Id. Hunt has not worked since July 31, 2008, and claims he is disabled because of physical and mental disorders, including back pain and depression. Tr. 141. However, he inconsistently indicated in documents filed with the Social Security Administration that he stopped working on July 31, 2008, because the company that he worked for went out of business. Id. He further testified at the administrative hearing that he would have continued to work for the company if he would not have been laid off. Tr. 40.

Although Hunt claims that he has been disabled and unable to work since July 31, 2008, the record reveals that Hunt applied for and received unemployment compensation benefits after that date. Tr. 40 and 130. Records of the Social Security Administration reveal that during the 2nd quarter of 2008 Hunt received $936.00 in unemployment compensation, during the 4th quarter of 2008 he received $8112.00, and during the 1st quarter

4

of 2009 he received $3060.00. Tr. 130. At the administrative hearing, Hunt testified that he commenced receiving unemployment compensation benefits in July of 2008 and that he was still receiving unemployment compensation benefits. Tr. 40.[7]

---

7. The ALJ used Hunt's receipt of unemployment compensation as one reason to find that he was not credible. Counsel argues this was error because Hunt could work part-time and still collect unemployment compensation benefits. We are not persuaded by this argument for several reasons.

    An individual can only collect unemployment compensation if the individual is able and willing to accept work. 43 P.S. §801(d)(1). The Pennsylvania Department of Labor and Industry's website indicates the following: "UC is for people who lost a job because of something that wasn't their fault. If you're out of work because your employer had to make cutbacks, close an office, went out of business or something you couldn't control, it's possible that you will be eligible to collect UC. If your out of work because you quit, you might not be eligible for UC. If you were fired from your company, you might not be able to collect UC. Finally, you must be able and ready to return to work(either to your old job or a new one) to claim UC."

    The Pennsylvania Department of Labor and Industry further published a handbook in 2010 (UCP-1 REV 12-10) which indicates that to be eligible for UC a claimant must file timely biweekly claims for the weeks that the claimant is unemployed. The handbook further indicated that a claimant is ineligible if the claimant limits the number of hours he or she works when there is additional work available. With respect to part-time work, a claimant can be eligible for benefits under the following circumstances: (1) the claimant's regular hours are reduced because of lack of work; (2) the claimant is separated from his or her job and has obtained other employment with fewer hours of work; and (3) the claimant separated from one job but continues to have part-time employment with another employer. The handbook also indicates that a claimant is ineligible if the claimant refuses a referral to a job opportunity or is unable to work because of illness or disability. Pennsylvania Unemployment Compensation Handbook, Pennsylvania Department of Labor & Industry, Office of Unemployment Compensation Benefits, http://www.lancasterlibraries.org/lslc/lib/lslc/biz_pdfs/pennsylvania_unemployment_compensation_handbook.pdf (Last accessed December 14, 2012).

      The fact that Hunt collected unemployment compensation after his alleged disability onset date of July 31, 2008, suggests that he represented when applying for such benefits that he was able and willing to accept employment. In fact Hunt

5

Hunt's past relevant work experience[8] is as a corrections officer, described by a vocational expert as semi-skilled, medium work, and as a construction worker, described as unskilled, very heavy work.[9] Tr. 57.

---

testified that he so represented. Tr. 41. Also, those who have an application for unemployment compensation approved are required to file a claim biweekly for benefits. The handbook states as follows: "After you have filed your application for UC benefits and if you are financially eligible, you must file a claim for each week in which you are totally or partially unemployed. A week for UC purposes is a calendar week that begins Sunday and ends Saturday. The date of the Saturday is called the compensable week ending (CWE) date. In most cases you will file claims for two weeks at one time. This is called a biweekly claim. Although you will file for two weeks at one time, you will certify your eligibility for each week separately." Hunt did not indicate that he was only applying for part-time work. Furthermore, Hunt testified that after July 31, 2008, he did not seek any employment which is inconsistent with his application for unemployment compensation benefits. Tr. 40.

8. Past relevant employment in the present case means work performed by Hunt during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

9. The terms sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even

6

The administrative record in this case is 411 pages in length and we have thoroughly reviewed that record. In the present appeal Hunt has raised several arguments. Only one of the arguments has merit and is the basis for remanding this case to the Commissioner for further proceedings. The reason for the remand is set forth below.

---

> though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> (c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.
>
> (d) *Heavy work*. Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work.
>
> (e) *Very heavy work*. Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, we determine that he or she can also do heavy, medium, light and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565

8

(1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating claims for disability insurance benefits. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments

---

10. If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

that is severe,[11] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an

---

11. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

12. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

13. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

ordinary work setting on a regular and continuing basis. See
Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996).
A regular and continuing basis contemplates full-time employment
and is defined as eight hours a day, five days per week or other
similar schedule. The residual functional capacity assessment
must include a discussion of the individual's abilities. Id; 20
C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual
functional capacity' is defined as that which an individual is
still able to do despite the limitations caused by his or her
impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the
sequential evaluation process found that Hunt has not engaged in
substantial gainful work activity since July 31, 2008, the
alleged onset date. Tr. 15.

At step two of the sequential evaluation process, the
administrative law judge found that Hunt has the following severe
impairments: (1) a spinal disorder causing low back pain and (1)
a dysthymic disorder.[14] Tr. 16.

At step three of the sequential evaluation process the
administrative law judge found that Hunt's impairments did not
individually or in combination meet or equal a listed impairment.

---

14. Dysthymic disorder is "a mood disorder characterized by
depressed feeling (sad, blue, low, down in the dumps) and loss of
interest or pleasure in one's usual activities and in which the
associated symptoms have persisted for more than two years but
are not severe enough to meet the criteria for major depression."
Dorland's Illustrated Medical Dictionary, 550 (32nd Ed. 2012).

12

Tr. 19-20. However, as part of the step three analysis the administrative law judge found that Hunt had moderate difficulties with respect to concentration, persistence and pace. Tr. 20.

At step four of the sequential evaluation process the administrative law judge found that Hunt could not perform his prior relevant work as a corrections officer and construction worker, but that he had the residual functional capacity to perform light work involving only low stress (defined as one requiring little or no decision-making, involving no especially risky duties such as carrying a weapon or handling emergencies, and demanding only slow pace or low production goals). Tr. 22.

In setting the physical aspect of the residual functional capacity the administrative law judge relied on the opinion (dated April 20, 2009) of Louis B. Bonita, M.D., who reviewed Hunt's medical records on behalf of the Bureau of Disability Determination and found that Hunt could perform limited range of light work. Tr. 293-299. The administrative law judge also relied on the opinion (dated February 12, 2009) of Stephen Capuano, D.C., a treating chiropractor, who found that Hunt could occasionally lift and/or carry 25 pounds, had no limitations with standing or walking and could sit for an unspecified period of less than 6 hours, had some limitations in pushing and pulling with the extremities and could occasionally

13

bend, kneel, stoop, crouch, balance and climb.[15] Tr. 268-269. The administrative law judge also found that Hunt's statements regarding his impairments and their impact on his ability to work were less than fully credible. Tr. 24. However, the administrative law judge rejected the opinion (dated January 18, 2009) of Gregory H. Pierce, M.D., Hunt's primary care physician. Tr. 256 and 273.[16] Dr. Pierce's assessment precludes any gainful employment. He found that Hunt could only stand and walk for 1 hour or less during an 8-hour workday and sit for less than 1 hour during an 8-hour workday. Tr. 273. However, his assessment is internally inconsistent because he also states that Hunt could occasionally (up to 1/3 of an 8-hour workday or approximately 2.67 hours) carry 10 pounds. Id. In order to carry an object, common sense dictates that the person is either standing or walking.

In setting the mental aspect of the residual functional capacity the administrative law judge relied in part on the opinion (dated April 16, 2009) of Mark Hite, Ed.D., a

---

15. Hunt has argued that the ALJ should not have accepted the opinion of Dr. Capuano because as a chiropractor he was not an "acceptable medical source" under the Commissioner's regulations. This court has rejected in the past this argument when made by the Commissioner. McKnight v. Astrue, Civil No.10-02126, slip op. at 61 (M.D. Pa. Oct. 20, 2011). Although Dr. Capuano was not an acceptable medical source to provide a diagnosis of a medically determinable impairment or condition, he was an appropriate "other source" to "show the severity of [Hunt's] impairment(s) and how [the impairments] affect[ed] [his] ability to work." 20 C.F.R. § 404.1513(d).

16. One of the difficulties of reviewing administrative records is that often pages of medical records are out of order.

psychologist, who reviewed Hunt's medical records on behalf of the Bureau of Disability Determination and found that "[t]he medical evidence establishes medically determinable impairments of Depressive Disorder NOS and Alcohol Dependence in Remission Five Years" but that Hunt "is able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairments." Tr. 291. The administrative law judge also relied in part on the opinion (dated March 23, 2009) of M. Penny Levin, Ph.D., a psychologist, who examined Hunt and found that Hunt suffered from dysthymic disorder. Tr. 274-275 and 302-305. Both Dr. Hite and Dr. Levin found that there were several mental abilities where Hunt had moderate difficulties. Tr. 274, 286 and 289-290. Dr. Hite found that Hunt had a moderate difficulty with social functioning and with concentration, persistence and pace. Tr. 286.

No treating physician, including Dr. Pierce, or psychologist has provided a detailed functional assessment indicating that Hunt was disabled mentally for the requisite statutory continuous 12-month period.[17] Furthermore, there is no indications that Hunt received treatment from a psychiatrist or psychologist. The administrative law judge accepted Dr. Hite's

---

17. As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

15

conclusion that Hunt had moderate difficulties in concentration, persistence and pace but rejected the other moderate limitations assessed by Dr. Hite and Dr. Levin, including a moderate difficulty (1) in interacting appropriately with the public, supervisors and co-workers, (2) responding appropriately to work pressures in a usual work setting and to changes in a routine work setting, and (3) in the ability to accept instructions and respond appropriately to criticism from supervisors.  In rejecting these moderate difficulties, the ALJ did not point to any contrary opinion.

Based on the above residual functional capacity (light work involving low stress), and Hunt's age, education and work experience, and the testimony of a vocational expert the administrative law judge found that Hunt could not perform his prior relevant work as a correction officer and construction worker but that he had the ability to perform light work as an usher and inspector, and that there were a significant number of such positions in the local, regional and national economies. Tr. 24.  The ALJ also noted that the vocational expert even identified sedentary positions with a 30-minute sit/stand option which Hunt could perform. Tr. 24.  The transcript of the administrative hearing reveals that those positions were beverage order clerk and billing clerk and that there were a significant number of such jobs in the regional and national economies. Tr. 65.  In questioning the vocational expert, the administrative law judge did not include in the hypothetical a moderate limitation

16

in Hunt's concentration, persistence and pace. Tr. 59-65.

Hunt argues that the administrative law judge erred when (1) he rejected the opinion of Dr. Pierce, (2) he rejected some of the moderate limitations assessed by Dr. Levin, and (3) he failed to present a hypothetical question to the vocational expert which identified all of Hunt's limitations, including the moderate limitations in concentration, persistence and pace. Although we are not persuaded by the first and second arguments,[18] the third argument has substantial merit. We will only address the third argument because it is the basis for remanding the case to the Commissioner for further proceedings.

As stated above, at step three of the sequential evaluation process the administrative law judge found that Hunt had moderate difficulty with concentration, persistence and pace. However, when presenting a hypothetical question to the vocational expert, the administrative law judge did not include a moderate limitation in concentration, persistence and pace.

The Court of Appeals for the Third has held that if an administrative law judge poses a hypothetical question to a vocational expert that fails to reflect all of the applicant's impairments that are supported by the record, the vocational expert's opinion cannot be considered substantial evidence. Ramirez v. Barnhart, 373 F.3d 546, 552-553 (3d Cir. 2004); see

---

18. The fact that we are not persuaded by two of Hunt's arguments does not prevent the Commissioner from revisiting those issues if he finds that to be warranted.

also Corona v. Barnhart, 431 F.Supp.2d 506, 516 (E.D.Pa. 2006)("the ALJ's determination that Plaintiff suffers mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration is not properly reflected in her hypothetical question to the VE."); Warfle v. Astrue, Civil No. 10-1255, slip op. at 20 (M.D. Pa. May 5, 2011)(Muir, J.)("It is incumbent on the administrative law judge to include in a hypothetical question all the limitations that are supported by the records."); Little v. Astrue, Civil No. 10-1626, slip op. at 18-19 (M.D.Pa. September 14, 2011)(Kosik, J.)(same).

Although the administrative law judge limited Hunt to unskilled, light work involving low stress, this does not adequately reflect a limitation in concentration, persistence or pace. Id.[19] There are clearly many unskilled jobs that require an employee to maintain concentration, persistence and pace. There is no evidence in the record from a vocational expert that a moderate limitation in those areas would not impact Hunt's ability to maintain light work positions as an usher and inspector or the sedentary positions of beverage order clerk and billing clerk. We can only speculate as to what the erosion in the number of jobs available would have been if a moderate

---

19. See also O'Connor-Spinner v. Astrue, __F.3d__, No. 09-4083 (7th Cir. Nov. 29, 2010)("[T]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do task of a given complexity.").

limitation in concentration, persistence or pace would have been included in the hypothetical question.[20]

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) vacate the decision of the Commissioner and remand the case to the Commissioner for further proceedings.

An appropriate order will be entered.


s/ James M. Munley
JAMES M. MUNLEY
United States District Judge


Dated: December   17, 2012

---

20. It is also important to mention that at step five of the sequential evaluation process the burden is on the Commissioner to produce evidence demonstrating that other work exists in significant numbers in the national economy that the applicant can perform. 20 C.F.R. §§ 416.912 and 416.960(c).